# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

STEPHANIE YVONNE THUMBTZEN,

        Plaintiff,

  vs.

UBISOFT INC. AND OPTIMUM PRODUCTIONS,

        Defendants.

CASE NO.: 815-cv-1735-T-SDM-EAJ

## DEFENDANTS' DISPOSITIVE MOTION FOR SUMMARY JUDGMENT

Defendants Ubisoft Inc. and Optimum Productions hereby move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## INTRODUCTION

While described as a lawsuit involving use of Plaintiff Stephanie Thumbtzen's "rights in her image and likeness" in a video game, there is no legally cognizable "likeness" in this case. Nearly 30 years ago, Thumbtzen was hired to play the character of "Lead Girl" in a music video for Michael Jackson's song "The Way You Make Me Feel." Thumbtzen admits she does not own any legal rights to the video or her performance in it, she does not own any legal rights to the album cover for the song which features her character from the music video (which she has known about for decades), and she does not own any legal rights to the generic costume that she wore in the music video: a basic black dress and black boots.

Faced with the reality that she cannot maintain claims that expressly relate to her "likeness," Thumbtzen withdrew them. Thumbtzen is now asserting *only* a claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") against Defendants Ubisoft Inc. and Optimum Productions (collectively, "Defendants"), and a breach of contract claim against Optimum concerning a Screen Actors Guild Standard Agreement between Thumbtzen and Optimum in 1987.

Still, the problems with Thumbtzen's claims are voluminous. Thumbtzen's FDUTPA claim never gets off the ground, as it is time barred and Thumbtzen lacks standing to bring it. It is also meritless, as there is no alleged "deceptive act" and no evidence that any customer was confused into believing that Thumbtzen was sponsoring or promoting the Video Game. Thumbtzen's breach of contract claim fares no better, as there is no alleged breach. And on top of these issues, Thumbtzen has failed entirely to put forth any case of causation or damages. Summary judgment should be entered against Thumbtzen on all claims.

<u>**STATEMENT OF UNDISPUTED FACTS**</u>

**A.  Optimum Hires Plaintiff To Play Character Of "Lead Girl" In Music Video For Michael Jackson's Song "The Way You Make Me Feel"**

Michael Jackson's studio album, "Bad" was released in August 1987. "Bad" was distributed by Epic Records, a division of Sony Music Entertainment ("Sony"), and contained the song "The Way You Make Me Feel," which was released as the third single. Declaration of Karen Langford ("Langford Dec."), ¶ 6.

In September 1987, Optimum Productions ("Optimum"), the company that was involved in creating short films to promote Michael Jackson's music,[1] hired Thumbtzen to appear in the short

---

[1]  Following Michael Jackson's death on June 25, 2009, Optimum became an asset of the Estate of Michael Jackson. Langford Dec. ¶ 5.

film created as a promotional music video for Jackson's song "The Way You Make Me Feel" (the "Music Video"). Langford Dec. ¶¶ 7-8; *see also* Declaration of Michelle L. Marriott ("Marriott Dec.") Ex. A (Plaintiff's Third Amended Complaint ("TAC"), Dkt. 92 at ¶ 13 (alleging that "[i]n or about September 1987, Plaintiff was selected to appear in a music video alongside internationally renowned pop music star Michael Jackson titled 'The Way You Make Me Feel.'")).

Thumbtzen was hired to portray the role of "Lead Girl" in the Music Video. Marriott Dec. Ex A (TAC ¶ 41). In playing that character, she wore the costume dictated by, and in large part provided by, Optimum: a basic black tank dress, black boots, and hair extensions to make her shoulder-length hair look longer. Marriott Dec. Ex. C (Thumbtzen Dep. 55:19-56:21 ("Q: So that was wardrobe that they [Optimum] provided? A: Yes."), 57:8-10 ("Q: Did they [Optimum] tell you to wear your boots when you came back for the production? A: Yes."), 58:6-59:9 ("Q: So they [Optimum] modified your natural hair by making it . . . fuller? A: Well, not fuller, but longer, really.")). Thumbtzen's performance in the Music Video consisted of walking – she did not dance, sing, or speak – and she did so at the direction of the choreographer for the Music Video. *Id*. 53:17-54:1, 54:5-18.

**B.     Thumbtzen Has No Legal Rights To The Music Video, Or To Her Performance In It.**

Thumbtzen's work in the Music Video was governed by a "Screen Actors Guild" form contract. Marriott Dec. Ex. C (Thumbtzen Dep. at 11:7-10 ("Q: And that was a Screen Actors Guild contract that applied to your work on The Way You Make Me Feel video? A: Yes."))[2] Legal counsel for Optimum and the Estate of Michael Jackson maintained copies of the form Screen Actors Guild contracts for more than a dozen performers who appeared in the Music Video, including a "Screen Actors Guild Standard Employment Contract, Industrial/Educational Film or

---

[2]     *See also* Marriott Dec. Ex C (Thumbtzen Dep. 16:24-17:13, 135:3-137:3).

Videotape Programs" ("SAG Contract") for Thumbtzen, along with her W-4 tax withholding form. Langford Dec. ¶¶ 8-9 and Exhibits B and C. Thumbtzen did not specifically negotiate any of the terms of her employment, but rather, accepted the deal initially offered by Optimum. Marriott Dec. Ex C (Thumbtzen Dep. 20:24-21:15). However, Thumbtzen was represented by an agent, who handled the negotiation and contract with Optimum on her behalf. *Id.* (Thumbtzen Dep. 20:5-21:18).

The SAG Contract included a "Rider to Standard Employment Contract" (the "Rider"). Marriott Dec. Ex. A (SAG Contract ("8. Special Provisions – See Rider Attached.")). The Rider provided that Thumbtzen had no rights to the Music Video, her performance in the Music Video, any broadcast of the Music Video, or her name, voice, or likeness in connection with the role she played in the Music Video. *Id.* at Rider ¶¶ B-D. At her deposition, Thumbtzen confirmed the same. Specifically, Thumbtzen agrees that she has no legal rights to the Music Video:

> Q: Sitting here today, do you contend that you own any rights to The Way You Make Me Feel music video?
> A: No.
> Q: You don't own it?
> A: No.

Marriott Dec. Ex. C (Thumbtzen Dep. 185:21-186:1; *see also id.* at 186:2-188:5). She has no rights with respect to any broadcast of the Music Video:

> Q: So, to the extent that the video is broadcast, you agree that you don't have any rights to that broadcast. The – and I'm talking about the music video specifically.
> A: Yes.

*Id.* at 188:1-5. Thumbtzen further consented to transfer all rights in her performance in the Music Video to Michael Jackson and his companies:

> Q: Because you certainly consented to be in that music video. Right?
> A: Yes.

Q: And you consented to give your rights to that performance over to Michael Jackson and his companies for purposes of the video only.

A: Yes.

*Id.* at 187:17-23. Thumbtzen also could not identify any proprietary rights to the costume that she wore in the Music Video:

Q: . . . Do you own any legal rights to a black dress?

A: [objection omitted] No.

Q: You would agree with me, there are millions of women in this country alone that have long curly dark hair. Right?

A: Perhaps. . . .

Q: Quite a few. Right?

A: Yes.

Q: Okay. And you don't own any legal rights to boots, black boots.

A: No.

*Id.* at 265:16-266:12. Additionally, a still photograph depicting a silhouette of Thumbtzen's character and Michael Jackson's character was used as the album cover for the single "The Way You Make Me Feel," and Thumbtzen agrees she does not own any legal rights to the album cover, either. *Id.* at 185:8-20, 199:24-200:24, 243:2-4 ("Q: You agree with me that you do not have any legal rights to the album cover itself. Correct? A: Yes.").[3]

**C.     The Character From The Music Video Is Not Thumbtzen's "Likeness."**

Following the release of the Music Video, Thumbtzen did not wear her costume from the Music Video (or otherwise appear as her character from the Music Video) in press events, in other professional engagements, or in public, unless she was specifically hired to perform as the character. Marriott Dec. Ex. C (Thumbtzen Dep. 178:19-181:18, 182:9-11 ("Q: But it wasn't part

---

[3]     Thumbtzen concedes that she was aware of the album cover by 1990, and that she understood that if she had any legal claim relating to the album cover, she needed to bring such claim at that time. Marriott Dec. Ex. C (Thumbtzen Dep. 199:24-200:12). She did not bring any claim relating to the album cover. *Id.* at 200:25-201:7.

of your personal look on a daily basis. A: No."); 184:16-18 ("Q: But, otherwise, you appeared in your own clothes, with your own hair. A: Yes."); 179:18-23 ("Q: . . .[W]hen was the last time you wore a formfitting black tank-style dress in public. A: . . . Maybe 2007, '8, '6. I don't know. Q: Okay. So at least ten years ago? A: Oh yeah. Definitely.")).

In addition, other women later played the same character wearing the same costume in connection with Michael Jackson's concert tours. Thumbtzen agrees that it was not a violation of her rights, and that she did not take legal action, when other women played the same character wearing a black dress and black shoes. *Id.* at 90:17-91:5, 91:14-21, 92:4-93:12.

Thumbtzen ultimately stopped working in the entertainment business altogether. *Id.* at 72:23-73:17. In fact, since at least 2005, Thumbtzen has not made any effort to solicit endorsement deals, and has not licensed her name or likeness for any products or merchandise. *Id.* at 77:14-23, 78:17-22 ("Q: During the period 2005 to present, have you made any effort to try and solicit work in television commercials or endorsing any products? . . . A: No.").

**D.    "Michael Jackson: The Experience" Video Game.**

On November 23, 2010, Ubisoft, Inc. ("Ubisoft") commercially released a dance genre video game entitled "Michael Jackson: The Experience" (the "Video Game") in the United States, including in Florida. Declaration of Alkis Argyriadis ("Argyriadis Dec.") ¶ 4. To create the Video Game, Ubisoft licensed sound recordings and music video clips – including the recording and music video for "The Way You Make Me Feel" – from Sony Music Entertainment, which owned the rights to them. Argyriadis Dec. ¶ 3, Langford Dec. ¶ 10.

The Video Game was physically sold on a disc enclosed in a protective case. Argyriadis Dec. ¶ 5 and Ex. A. None of the promotional materials or packaging for the Video Game included any depiction of Thumbtzen's image or likeness. *Id.*; Marriott Dec. Ex. C (Thumbtzen Dep.

234:20-235:11, 264:18-24 ("Q: Along the same lines, you're not aware of any instance where anything that you contend looks like your likeness was used to actually advertise or promote, directly, the Michael Jackson: The Experience game. Right? A: As far as advertising or promotion, no, not that I'm aware of.")). In fact, "The Way You Make Me Feel" is not even listed as a featured track on the game packaging. Argyriadis Dec. ¶ 5 and Ex. A ("Includes chart-topping original tracks from Michael Jackson's groundbreaking career, featuring the smash hits: Bad, Beat It, Billie Jean, Smooth Criminal, Thriller, Black or White, and many more.").

When played on a compatible video game console, the Video Game included two modes: "Dance" and "Dance School." Argyriadis Dec. ¶ 6. In the "Dance" mode, the Video Game contained a menu of the 26 songs available for gameplay. *Id.* at ¶ 7. The menu included the album cover for each of the songs available for gameplay. *Id.* The gameplay for the song "The Way You Make Me Feel" featured two hired dancers, one male and one female. *Id.* ¶ 8. The female dancer who was filmed to create the game play for "The Way You Make Me Feel" is a Juliana Herrera, and she was expressly credited as a "Dancer" in the game credits. *Id.* at 8. The below screenshot from the Video Game shows the male and female avatars from the gameplay of "The Way You Make Me Feel," their images animated such that facial features and fine details are blurred:



Argyriadis Dec. ¶ 8; *see also* Marriott Dec. Ex. A (SAC ¶ 21(ii)). At her deposition, Thumbtzen confirmed that the dancer depicted in the above screenshot was not her, and that no one would believe that it was:

Q: So there would be no confusion on the part of anyone that you were actually a dancer in this game. Right?

A: Right.

Q: No one would have any reason to believe that. Correct?

A: Correct.

Marriott Dec. Ex. C (Thumbtzen Dep. 242:7-13).

The Video Game also included a "Dance School" that provided choreography instruction. The "Dance School" module in the Video Game for "The Way You Make Me Feel" was locked, meaning that a user had to first earn "25 stars" through gameplay before accessing the module. Argyriadis Dec. ¶ 9. Once unlocked, the Dance School tutorial began with the licensed 15-second clip from the music video for the song, followed by a dance tutorial. *Id.*

**E.     Thumbtzen's Lawsuit.**

Despite having first learned of the Video Game in late 2010, and consulting with at least four different lawyers regarding potential representation, Thumbtzen did not file this lawsuit until over 4 years and 4.5 months after the release of the Video Game. Marriott Dec. Ex. C (Thumbtzen Dep. 149:1-153:20, 148:2-17, 156:16-157:4). On April 10, 2015, Thumbtzen initiated this case in Florida state court. Marriott Dec. Ex. D (Complaint). While pending in state court, on May 26, 2015, Thumbtzen alleged claims for (1) "Unauthorized Publication" of her likeness, image and persona under Florida Statute § 540.08, (2) Common Law Right of Publicity, (3) False Endorsement under the Lanham Act, and (4) Violation of Florida Deceptive & Unfair Trade Practices Act under Florida Statute § 501.021. Marriott Dec Ex. E (Amended Complaint). Ubisoft timely removed to this Court, invoking diversity of citizenship under 28 U.S.C. §1441(b), and federal question jurisdiction due to Plaintiff's claim under the Lanham Act, a federal statute, under 28 U.S.C. §1441(c). Marriott Dec. Ex. D (Complaint, Dkt. 001-2), Ex. F (Notice of Removal dated July 27, 2015, Dkt. 001).

On October 26, 2015, Thumbtzen added a claim against Optimum for "Breach of Contract," based on the SAG agreement maintained by Optimum. Marriott Dec. Ex. G (Motion for Leave, Dkt. 16 at 1) and Ex. A (SAC). Thumbtzen expressly alleged that "Defendant, OPTIMUM PRODUCTIONS, INC., signed an employment contract with Plaintiff on or about September 15, 1987, attached hereto as Exhibit One," and that "Plaintiff agreed to perform on camera services as the 'Lead Role' in the music video 'The Way You Make Me Feel.'" Thumbtzen's Second Amended Complaint (Dkt. 29) at ¶¶ 57-58 and Exhibit One); Marriott Dec. Ex. C (Thumbtzen Dep. 207:25-210:13 (confirming agreement with Paragraph 57 of SAC), 211:5-9)).[4]

As of the date Thumbtzen's deposition was taken (March 13, 2017), Thumbtzen had not purchased or even seen the Video Game. Marriott Dec. Ex. C (Thumbtzen Dep. 155:1-15; 160:25-161:3 ("Q: So still, to this day, you've never tried to observe or play, yourself, the Michel Jackson: The Experience video game? A: No.")).

On April 7, 2017, Defendants moved for summary judgment on all of Thumbtzen's claims. (Dkt. 72). On April 24, 2017, Thumbtzen filed her opposition to Defendants' dispositive motion for summary judgment. (Dkt. 75). In the Opposition, Thumbtzen stated that she was "withdrawing" her right of publicity and Lanham Act claims. Dkt. 75. Thumbtzen also submitted a declaration from a newly-minted attorney with the Screen Actors Guild, Justin Touretz, who Thumbtzen never disclosed as an expert, and who Thumbtzen never disclosed as a witness prior to the close of discovery. Dkt. 75-2; *see also* Dkt. 87 (Defendants' Objections to Plaintiff's

---

[4] Thumbtzen also repeatedly referenced the SAG Contract in her published memoirs. Thumbtzen Dep. 191:21-192:7 and Ex. 9 ("The Way He Made Me Feel," UBST000524); Thumbtzen Dep. 191:2-20 and Ex. 8 ("The King Of My Heart," UBST000322). The SAG Contract in the record – which was maintained as a business record by Optimum and was attached to Thumbtzen's Second Amended Complaint and is attached to the TAC – is the only evidence in the record.

Summary Judgment Response).

On May 30, 2017, the Court issued its Order (Dkt. 91) directing Thumbtzen to file a third amended complaint "to omit the 'withdrawn' claims and to omit the defendants voluntarily dismissed from the action." The Court admonished that "[t]he third amended complaint must not add a new claim or a new allegation."

**F. Thumbtzen's Claims.**

Thumbtzen filed her Third Amended Complaint for Damages ("TAC") on June 15, 2017. (Dkt 92). The TAC included only two claims: (1) a FDUTPA claim against Ubisoft and Optimum, and (2) a claim for breach of the SAG Agreement against Optimum only.

Thumbtzen's FDUTPA claim alleges that "Defendants knowingly used the unauthorized likeness of the Plaintiff in the MJ Video Game," that "Defendants have deceived and confused the public into believing that Plaintiff authorized the use of her likeness in connection with the MJ Video Game. Dkt. 92 at 8.

Thumbtzen's breach of contract claim alleges a breach of the SAG Agreement dated September 15, 1987, as in the Second Amended Complaint. Dkt. 92 at 8. However, despite the Court's clear admonition that Thumbtzen was not to add any new allegations to her complaint (Dkt. 91), the TAC includes several new allegations. In paragraph 42, Thumbtzen alleges, for the first time, that "[t]here is no content regarding video games." Thumbtzen also added a new paragraph (¶ 44) alleging that "Defendant willfully and maliciously failed to communicate with SAG regarding the use of Plaintiff's likeness in the Video game, Michael Jackson, The Experience," and added a new party –"and SAG" – to paragraph 45.

Thumbtzen did not produce a single document in response to Defendants' requests, she did not take any discovery of Defendants, and she did not serve any expert reports. Nevertheless,

Thumbtzen claims that the Video Game "features Ms. Thumbtzen's image and likeness" based on three photographs in the TAC, which were sent to her in 2010 by a friend. Marriott Dec. Ex. A (TAC ¶ 21), Ex. C (Thumbtzen Dep. 157:15-158:15). While Thumbtzen has undertaken no efforts to establish whether or how these photographs appear in the Video Game, Defendants understand Thumbtzen's allegations to be limited to the following:

(a) The 15-second clip of the Music Video in the "Dance School" mode of the Video Game. Marriott Dec. Ex. C (TAC ¶ 21(i)).

(b) The female avatar in the gameplay for "The Way You Make Me Feel," which was portrayed by Juliana Herrera. *Id.* (TAC ¶ 21(ii)).

(c) The album cover for "The Way You Make Me Feel," utilized in the menu for the "Dance" module of the Video Game. *Id.* (TAC ¶ 21(iii)).

Marriott Dec. Ex. C (242:14-22). However, in response to Defendant's first motion for summary judgment, Thumbtzen stated that "[t]his is not about rights to the Music Video," and that "[t]he album cover is not the issue here." Dkt. 75 at 3. Thus, Defendants understand that Thumbtzen's claims center principally on the female avatar (b). To aid in the efficient and expedient resolution of this case, Defendants respectfully request that the Court grant them summary judgment on each of Thumbtzen's claims, and dismiss this case in its entirety. [5]

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party opposing a motion for summary judgment on a claim for which it carries the burden of proof must present evidence sufficient to prove each element of that claim in order to avoid summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "Where the record taken as a

---

[5] The TAC generically identifies "Defendants" as the targets of Claim 1 (TAC ¶ 34). Claim 2, which is a claim for breach of contract, is asserted only against Optimum.

whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

<u>ARGUMENT</u>

**A.      Summary Judgment Is Warranted On Plaintiff's FDUTPA Claim.**

Having withdrawn her claims for misappropriation of her likeness under Florida statutes, common law, and the Lanham Act, Thumbtzen is left only with a vaguely-alleged claim under the Florida Deceptive and Unfair Trade Practices Act. Thumbtzen's TAC alleges only that "Defendants knowingly used the unauthorized likeness of the Plaintiff in the MJ Video Game," and that "Defendants have deceived and confused the public into believing that Plaintiff authorized the use of her likeness in connection with the MJ Video Game." Dkt. 92 ¶¶ 34-35. Throughout the case, however, Thumbtzen took no action or effort to remotely support this claim. Nor could she have, as it is time barred and frivolous because there was simply no deception or confusion by the public. Accordingly, as set forth below, Defendants are entitled to summary judgment.

**1.      Thumbtzen's FDUTPA Claim Is Time Barred.**

Despite the public U.S. release of the Michael Jackson: The Experience game on November 23, 2010, Thumbtzen did not file any claims until April 2015 and did not assert her FDUTPA claim until May 2015. Because she did not bring her claim prior to the expiration of the four-year statute of limitations on November 23, 2014, her claim is time barred.

**(a)      A Four Year Statute Of Limitations Applies To FDUTPA Claims Under Florida Law[6]**

---

[6]   Because statutes of limitations are substantive laws, this Court applies Florida state law in determining the applicable period of limitations. *Miller v. Anheuser Busch, Inc.*, 348 Fed. Appx. 547, 550 (11th Cir. 2009) ("state statutes of limitations are substantive laws and must be followed by federal courts in diversity actions"). *See also Cambride Mut. Fire Ins Co. v. City of Claxton, Ga.*, 720 F.2d 1230, 1232 (11th Cir. 1983) (federal court in a diversity action must apply the controlling substantive law of the state).

Florida Statute § 95.11(3)(p) provides that a party must bring an action "not specifically provided for in these statutes" within four years of the accrual of the cause of action. *E.g.,* Fla. Stat. § 95.11(3)(p) (four year limitations period applies to "[a]ny action not specifically provided for in these statutes"). Florida Statute § 95.11(3)(f) similarly mandates that a party must bring an action "founded on a statutory liability" within four years after accrual. Plaintiff's FDUTPA claim, which is founded on a statutory liability pursuant to Florida Statute § 501.024, is therefore subject to the four-year statute of limitations. *Sundance Apartments I, Inc. v. Gen. Elec. Cap. Corp.*, 581 F.Supp.2d 1215, 1223 (S.D. Fla. 2008) (applying four-year limitations to FDUTPA claim); *Marlborough Holdings Group Ltd. v Azimut-Benetti, Spa, Platinum Yacht Collection No. Two, Inc.*, 505 Fed. Appx. 899, 2013 WL 375178 (11th Cir. 2013) ("The four-year statute of limitations for an action founded upon a statutory liability applied to Marlborough's FDUTPA claims.").

### (b)      Thumbtzen's Claims Accrued on November 23, 2010.

Claims based on the unauthorized use of a person's image or likeness accrue at the time of the first publication under Florida's "single publication rule." *See* Fla. Stat. §§ 770.05 and 770.07; *Putnam Berkley Group, Inc. v. Dinin*, 734 So.2d 532, 535 (Fla. Dist. Ct. App. 1999). Specifically, Florida law provides that a "cause of action for damages founded upon a single publication or exhibition or utterance . . . shall be deemed to have ***accrued at the time of the first publication*** or exhibition or utterance thereof in this state." Fla. Stat. § 770.07 (emphasis added). Pursuant to this rule, the unauthorized use of any photograph, likeness, or image – independent of the actual number of copies published – is treated as *one* publication and gives rise to *one* cause of action. *See* Fla. Stat. § 770.05; *Putnam*, 734 So.2d at 535. For example, in *Putnam Berkley Group, Inc. v. Dinin*, the court held that a woman who was the subject of a photograph first published in a book in Florida in 1988 was barred from bringing a claim under Florida Statute § 540.08 four years after

the first publication in Florida. *Putnam*, 734 So.2d at 532-33, 535. Moreover, it does not matter when the plaintiff "discovered" the publication. *See Putnam*, 734 So.2d at 534-36 (claim accrued at time of first publication, not when plaintiff discovered unauthorized publication); *Miller v. Anheuser Busch, Inc.,* 591 F.Supp.2d at 1381, *affirmed in part, reversed in part* 348 Fed. Appx. 547 (four year statute "beings to run at the date of publication (not at discovery)"); *see also Cummings v. Sony Music*, 2003 WL 22889496 at *3 (S.D.N.Y. August 28, 2003) (noting that, under Florida law, the "single publication rule" means that the "limitations period runs from the first distribution of the offending item").

The Video Game was published and commercially available in the United States, including Florida, on November 23, 2010. Argyriadis Dec. ¶ 4. Thumbtzen has never disputed this. In fact, Thumbtzen admitted that she personally knew about the game in 2010.[7] Thumbtzen's only response has been to hypothesize that, under different facts, it might be possible for a later republication to be actionable if it has a "distinct set-up and arrangement" from a previous publication. Dkt. 75 at 6 (citing *Epic Metals Corp. v. CONDEC, Inc.,* 867 F. Supp. 1009 (1994)). Here, however, there is no evidence to suggest a later republication with a "distinct set-up and arrangement" from the Video Game published in November 2010. In fact, it is difficult to understand how Thumbtzen could advance such a theory, as she has never seen the Video Game first-hand. Dkt. 72 at 9. Thus, Thumbtzen's FDUTPA claim, which alleges the use of her likeness in the Video Game, accrued on November 23, 2010.

### (c) Thumbtzen Failed To Bring Her Claim Within The Four-Year

---

[7] Although the date Thumbtzen discovered her claims is legally irrelevant, Thumbtzen admits that she knew about the Video Game (and the alleged use of her image and likeness therein) by late 2010, more than four years before she filed her claims. Marriott Dec. Ex. C (Thumbtzen Dep. 157:15-158:15). She also admits that she knew about the album cover for the single "The Way You Make Me Feel" by at least 1990, and did not bring any legal claim arguing that it used her likeness without her permission. *See supra*, n. 3.

**Limitations.**

Thumbtzen filed her FDUTPA claim outside the applicable four-year time period. Applying Florida's first publication rule, Plaintiff had to file her claims by November 23, 2014 (four years after the November 23, 2010 publication of the Video Game). Plaintiff did not initiate this action until April 10, 2015, over four months past the bar date, and did not serve that initial complaint. Marriott Dec. Ex. D (Complaint). Moreover, Thumbtzen did not add the FDUTPA claim at issue until even later, May 26, 2015. As a result, the FDUTPA claim is time barred, and summary judgment is appropriate. *Fowler v. Towse*, 900 F. Supp. 454, 459 (S.D. Fla. 1995) (summary judgment appropriate based on statute of limitations).

### 2. Plaintiff Is Not A "Consumer" And Cannot Bring A FDUTPA Claim.

FDUTPA is a consumer protection law intended to "protect consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the course of any trade or commerce." Fla. Stat. 501.202(2). FDUTPA allows a "person who has suffered a loss as a result of a violation" of the FDUTPA to bring a cause of action. Fla. Stat. 501.211(2).

However, courts have limited such an action to a "consumer" in the conduct of trade or commerce, or a "legitimate business enterprise." *Kertesz v. Net Transactions, Ltd.*, 635 F. Supp. 2d 1339, 1349-50 (S.D. Fla. 2009) (barring FDUTPA claim by individual who did not "act in some manner as a consumer in the conduct of trade or commerce"); *Aceto Corp. v. TherapeuticsMD, Inc.*, 953 F. Supp. 2d 1269, 1287 (S.D. Fla. 2013) (clause regarding purpose of the FDUTPA statute "lists two independent groups that the Act seeks to protect: first, 'the consuming public,' and second, 'legitimate business enterprises'").[8] "The critical term in the money damages

---

[8] The FDUTPA was amended in 2001, resulting in a split among the courts as to whether a person has to be a consumer to bring a claim for damages under FDUTPA. *See Bilotta v. Citizens*

provision of FDUTPA is that such actions must be brought by a consumer." *Beacon Prop. Mgmt., Inc. v. PNR, Inc.*, 890 So. 2d 274, 278 (Fla. 4[th] DCA 2004).

Thumbtzen is not a consumer. She admitted she has never seen or purchased the Video Game on which her claim is based. Marriott Dec. Ex. C (Thumbtzen Dep. 155:1-15; 160:25-161:3 ("Q: So still, to this day, you've never tried to observe or play, yourself, the Michel Jackson: The Experience video game? A: No.")). Thumbtzen also is not a "legitimate business enterprise," as she stopped working in the entertainment business altogether. Marriott Dec. Ex. C (Thumbtzen Dep. at 72:23-73:17). In fact, since at least 2005, Thumbtzen has not made any effort to solicit endorsement deals, and has not licensed her name or likeness for any products or merchandise. *Id.* at 77:14-23, 78:17-22 ("Q: During the period 2005 to present, have you made any effort to try and solicit work in television commercials or endorsing any products? . . . A: No."). Accordingly Thumbtzen has no standing to bring, and cannot recover for, a FDUTPA claim.

### 3. Plaintiff's FDUTPA Claim Fails On The Merits.

To the extent that Thumbtzen can even bring a FDUTPA claim (she cannot), it fails on the merits. A FDUTPA claim has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1338 n. 25 (11th Cir. 2012). Thumbtzen's FDUTPA claim, to the extent it can be understood, fails all three elements.

### (a) No deceptive act or unfair practice.

For purposes of FDUTPA, a "deceptive act or practice" is one that "is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Bilotta*, 2013 WL 12155486, at *2 (quoting *Millennium Commc'ns & Fulfill. Inc. v. Office of the Atty Gen.*, 761 So.

---

*Info. Assoc., LLC*, 2013 WL 12155486, at *3 (M.D. Fla. Dec. 20, 2013). In *Bilotta*, this Court found "the cases holding that the Plaintiff must be a consumer to bring an action under FDUTPA for damages are persuasive. That line of cases rely on the statute's legislative history, and the general proposition in Florida courts that FDUTPA is meant to protect consumers." *Id.*

2d 1256, 1263 (Fla. 3d DCA 2000).  **Tellingly,** Thumbtzen abandoned her "false endorsement" claim under the Lanham Act, which is a trademark infringement claim that is analyzed identically to a FDUTPA claim that relied on the same allegations regarding "deception" in the context of the use of Thumbtzen's likeness.[9]  *Suntree Techs., Inc. v. Ecosense Int'l, Inc.,* 693 F.3d 1338, 1345 (11th Cir.2012) (applying legal analysis of Lanham Act to the "deceptive act" requirement for FDUTPA claims, noting that a FDUTPA claim also requires proof of causation and actual damages); *Pepsico, Inc. v. Distribuidora La Matagalpa, Inc.*, 510 F.Supp.2d 1110, 1114 (S.D. Fla. 2007) (analysis of FUTPA claim is the same as for Lanham Act claim).  For false endorsement, the plaintiff "must show (1) that it had trademark rights in the mark or name at issue and (2) that the other party had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two."  *Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*, 106 F.3d 355, 358 (11th Cir. 1997).  The inquiry is "not simply whether there is unauthorized use of a protected mark, but whether such use is likely to cause customer confusion." *Custom Mfg. and Eng'g, Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 647 (11th Cir. 2007).

Just as there was no claim for false endorsement claim under the Lanham Act, there also exists no claim under FDUTPA.  Thumbtzen has no trademark rights, there was no customer confusion, and there is no causation or actual damages.

### (i) Thumbtzen Holds No "Trademark Rights" To The Character She Played

As Thumbtzen readily admits, the alleged "likeness" at issue in this lawsuit is not her own personal likeness, but the character she played in the Music Video in 1987.  Marriott Dec. Ex. C (Thumbtzen Dep. 228:17-229:10 (referring to her "character likeness").  But, Thumbtzen also

---

[9] Thumbtzen does not allege an "unfair act" in either the Third Amended Complaint or in her response to Defendants' Interrogatory No. 5.  Marriott Dec. Ex. B.  Thumbtzen refers only to "deception."  Accordingly, Defendants' arguments focus on the "deceptive act" portion of the test.

admits that she does not own her performance in the Music Video, or any rights to the Music Video itself. Marriott Dec. Ex. C (Thumbtzen Dep. at 185:21-188:5, 243:2-4). Thumbtzen has never formally applied for trademark protection on the character she played in the Music Video or, more generally, on her image or likeness. *Id.* (Thumbtzen Dep. 232:20-22).

Nor has she established common-law trademark rights, which " are 'appropriated only through actual prior use in commerce.'" *Crystal Entm't & Filmworks, Inc. v. Jurado*, 643 F.3d 1313, 1321 (11th Cir. 2011).[10] Apart from her work as a paid actor in the Music Video three decades ago, Thumbtzen admits that she did not take any steps to establish or maintain a protectable interest in the character. Following the release of the Music Video, Thumbtzen did not wear her costume from the Music Video or otherwise appear as her character from the Music Video in press events, in other professional engagements, or in public, except when she was specifically hired to play the character from the Music Video. Marriott Dec. Ex. C (Thumbtzen Dep. 178:19-181:18, 182:9-11 ("Q: But it wasn't part of your personal look on a daily basis. A: No."); 184:16-18 ("Q: But, otherwise, you appeared in your own clothes, with your own hair. A: Yes."). This evidence directly contradicts any suggestion that Thumbtzen adopted a "trademark" likeness. And wearing a generic black dress and black boots is not an "identified" or "distinguished" mark. And even further, there is no evidence of any required "continuous use" of the alleged mark, as Thumbtzen concedes she has not even worn a similar costume in over ten years, and has not licensed her likeness or image. Marriott Dec. Ex. C. (Thumbtzen Dep. 179:18-23 ("Q: . . .[W]hen was the last time you wore a formfitting black tank-style dress in public. A: . .

---

[10] In order to establish "prior use" of a mark sufficient to establish ownership, a party must show: (1) adoption of the mark and (2) use in a way sufficiently public to identify or distinguish the mark in an appropriate segment of the public mind as those of the adopter of the mark. *Id.* at 1321. Once appropriated, "continuous use" is required to "retain a protectable interest." *Tally-Ho v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1022-23 (11th Cir. 1989). No facts in this case meet this test.

. Maybe 2007, '8, '6.  I don't know.  Q: Okay.  So at least ten years ago?  A:  Oh yeah. Definitely."); *Id.* at 73:18-75:8, 77:14-78:3).  These facts defeat the FDUTPA claim.

### (ii)     There Is No Customer Confusion

FDUTPA requires evidence of a "deceptive act" that is "is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment."  *Bilotta*, 2013 WL 12155486, at *2.  Here, there is no "deceptive act" as there is no allegation, let alone proof, of any false or misleading statements.

As a preliminary matter, it is well established that, in order to be an actionable trademark claim, there must be "confusion among consumers as to the 'affiliation, connection, or association' between the celebrity and the defendant's goods' or as to the celebrity's 'sponsorship or approval' of defendant's goods."  *Unique Sports Products, Inc. v. Wilson Sporting Goods Co.*, 512 F.Supp.2d 1318 (N.D. Georgia 2007).  In other words, "not all uses of a celebrity's image are actionable . . . . Only uses which suggest sponsorship or approval are prohibited [,] . . . *not mere use of an image or name.*"  *Cairns v. Franklin Mint*, 107 F.Supp.2d 1212, 1214 (C.D. Cal. 2000) (emphasis added).  Thus, courts have historically found a violation of trademark rights only where a defendant has used a celebrity's image in an advertisement for a product that clearly communicates an endorsement.  *See e.g., Abdul-Jabbar v. General Motors*, 85 F.3d 407, 410 (9th Cir. 1996) (professional basketball player's name used in advertisement); *Waits v. Frito Lay*, 978 F.2d 1093, 1097 (9th Cir. 1992) (use of likeness of singer Tom Waits' distinctive voice in Doritos commercial); *White*, 971 F.2d at 1396 (robot game-show hostess dressed like Vanna White used in television commercial for VCRs); *Wendt v. Host Int'l*, 125 F.3d 806, 808 (9th Cir. 1997) (animatronic figures based on plaintiffs' *Cheers* characters used in promotions for bars).

No endorsement or sponsorship exists here.  To the contrary, Thumbtzen admits that none of the three alleged uses of her likeness in the Video Game were used in an advertisement for a

product that clearly communicates an endorsement. Marriott Dec. Ex. C (Thumbtzen Dep. 234:20-235:11, 264:18-24 ("Q: Along the same lines, you're not aware of any instance where anything that you contend looks like your likeness was used to actually advertise or promote, directly, the Michael Jackson: The Experience game. Right? A: As far as advertising or promotion, no, not that I'm aware of.")). Thumbtzen is not depicted or referenced on the game packaging at all, nor is she referenced in the game credits. Argyriadis Dec. ¶ 8 and Ex. A. Moreover, Thumbtzen openly admits that she is not the dancer depicted in the avatar in the Video Game, and that there is "no confusion on the part of anyone" as to that fact. Marriott Dec. Ex. C (Thumbtzen Dep. 242:7-13).[11] This is confirmed by the fact that the credits of the Video Game specifically identify the *real* dancer, Ms. Herrera. Argyriadis Dec. ¶ 8. There was no "deception" to make consumers think that Thumbtzen was dancing in the game, and the evidence disproves Thumbtzen's conclusory allegations.

When faced with this reality in Defendants' first summary judgment motion, Thumbtzen abandoned her "use of likeness" claims and did not even address – let alone attempt to establish – a likelihood of confusion, or any "representation, omission, or practice that is likely to mislead the consumer" in "trade or commerce" as required for a FDUPTA claim.[12] *See Nazario v. Prof. Acc't*

[11] To be sure, Thumbtzen would be overreaching if she attempted to claim a trademark interest in the image of a woman (or digital image of a woman) with curly black hair wearing a generic "little black dress," black boots, and long curly hair extensions. Controlling law makes clear that generic names and mark (such as an image of a generic little black dress) are not protected under the Lanham Act. *Welding Services, Inc. v. Forman*, 509 F.3d 1351, 1358 (11th Cir. 2007) ("Courts have generally held that a term used generically cannot be appropriated from the public domain . . . .") *See also Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.,* 469 U.S. 189, 194, 105 S.Ct. 658 (a generic use of a word may not be registered as a trademark). Moreover, the style of Thumbtzen's "little black dress," black boots, and hair extensions in the Music Video is markedly *different* from the cap-sleeve dress, strappy heels, and shorter hairstyle worn by the avatar in the Video Game.

[12] Defendants also established that, even in the event that Thumbtzen established a likelihood of confusion (she did not), such alleged confusion would be outweighed by the First Amendment. Dkt. 72. Defendants submit that the First Amendment bars Thumbtzen's FDUTPA claim as it is analyzed identically to the (now-withdrawn) Lanham Act claim, and specifically incorporates that argument herein.

*Servs., Inc.*, No. 2:16-cv-772, 2017 WL 1179917, at *4 (M.D. Fla. March 30, 2017). To the contrary, Thumbtzen readily conceded that "Plaintiff's likeness was not used in the outer covering of the video games." Dkt. 72 at 20-21; Dkt. 75 at 7. Instead, Thumbtzen suggested that perhaps her FDUPTA claim could theoretically be broader than her Lanham Act claim (Dkt. 75 at 7). But there is no disclosure, evidence, or explanation to support this theory.

### (b) No causation or damages.

Even if Thumbtzen had a legally cognizable FDUTPA claim (she does not), there are not actual damages caused by the alleged deceptive act. The FDUTPA statute expressly states that "[i]n any action brought by a person who has suffered a loss ***as a result*** of a violation on this part . . . may recover ***actual damages***." Fla. Stat. 501.211(2) (emphasis added). Any "actual damages" must directly flow from the alleged deceptive act or unfair practice, and causation "must be direct, rather than remote or speculative." *Hennegan Co. v. Arriola*, 855 F. Supp. 2d 1354, 1361 (S.D. Fla. 2012).

"As a general rule, the measure of actual damages under [FDUTPA] is the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered." *Smith v. Wm Wrigley Jr. Co.*, 663 F. Supp. 2d 1335, 1339 (S.D. Fla. 2009). "FDUTPA does not provide for recovery of nominal damages, speculative losses, or compensation for subjective feelings of disappointment." *City First Morg. Corp. v. Barton,* 988 So.2d 82, 86 (Fla. Dist. Ct. App. 2008) (reversing judgment of damages where plaintiff "failed to establish any damages caused by the" defendant's actions, noting that FDUTPA provides for recovery only of "'actual damages,' which cannot include consequential or special damages"). Here, Thumbtzen has failed to "present sufficient evidence of causation and actual damages necessary to prove a claim under FDUPTA." *Hennegan*, 855 F. Supp. 2d at 1361.

Thumbtzen did not produce any evidence or disclose any damages theory (or evidence thereof) in response to a targeted interrogatory. To the contrary, when Defendants asked Thumbtzen to disclose "all facts and circumstances" relating to "any damages that Thumbtzen seeks in this case," Thumbtzen stated only that "this is about calculating damages for the failure of Defendants to get proper authorization for use of Ms. Thumbtzen's image and for the failure of Defendants to get a signed contract . . . and for the failure of Defendants to ever contact Ms. Thumbtzen re: being paid for the sales of the video game where her image was used. This is about punitive damages . . . ." Marriott Dec. Ex. B (Thumbtzen Interrogatory Response No. 1). Thumbtzen's conclusory response, however, does not purport to claim actual damages, and is in fact the antithesis of proof of "actual damages."

Thumbtzen's failure to prove actual damages also defeats any claim for punitive damages. *Martin v. United Sec. Servs. Inc.*, 314 So.2d 765, 772 (Fla. 1975) ("punitive damages are recoverable only where actual damages are shown"). In addition, Thumbtzen's purported claim for "punitive damages" fails on its own, as Thumbtzen failed to even make a showing by proffer or though evidence that some reasonable basis exists to support recovery of punitive damages, let alone prove such a basis. *T.W.M. v. Am. Med. Sys., Inc.*, 886 F. Supp. 842, 845 (N.D. Fla. 1995) (striking punitive damages claim, which consisted only of "legally insufficient conclusory allegation that the defendant acted 'deliberately and maliciously'" for failure to comply with Florida Statute 768.72); *See also* Fla. Stat. 768.72 ("In any civil action, no claim for punitive damages shall be permitted unless there is a reasonable showing by evidence in the record or proffered by the claimant which would provide a reasonable basis for recovery of such damages . . ."). With no actual damages that directly flow from any alleged unfair or deceptive act, Thumbtzen's FDUTPA claim fails. Summary judgment is warranted on this basis as well.

**C.      Summary Judgment Is Warranted On Thumbtzen's Breach Of Contract Claim**

Thumbtzen's claim against Optimum for breach of the SAG agreement is predicated on an alleged "failure to communicate" – i.e., that "Defendant willfully and maliciously failed to communicate with Plaintiff that her likeness would be used in the video game, Michael Jackson, The Experience" (TAC, ¶ 43) and that "Defendant willfully and maliciously failed to communicate with SAG regarding the use of Plaintiff's likeness in the Video game . . . ." *See also id.* ¶ 45 ("[T]he willful and malicious failure of Defendant to communicate with Plaintiff and SAG caused a material breach of the employment contract between Plaintiff and Defendant.")  As a preliminary matter, as established above, the avatar in the Video Game simply is not Thumbtzen's likeness. There is no "breach" of the SAG agreement, foreclosing Thumbtzen's claim for breach of contract.

Further, it is undisputed that there is no obligation in the SAG agreement that would require Optimum to communicate with Thumbtzen or SAG about its exploitation of the results and proceeds of the Music Video.  To the contrary, the SAG agreement unequivocally provides that "the results and proceeds of Player's services . . . and all material furnished, suggested or performed by Player" belong exclusively to Optimum and that it has the unfettered "right to exploit the results and proceeds of Player's services hereunder, in perpetuity, in any and all media throughout the world." Marriott Dec. Ex. A (TAC and Exhibit One, Rider ¶ D).  Because the SAG agreement does not obligate Optimum to notify Plaintiff or SAG about the exploitation of the Music Video, Optimum's alleged failure to do so is not a breach.

To the extent Thumbtzen attempts to reinvent her breach of contract claims based on the new allegations pled in paragraphs 42, 44 and 45 of the TAC, the Court should exclude such arguments a those paragraphs violate the Court's May 30 order, which instructed that Thumbtzen was not permitted to add new allegations or theories to her pleading.  The new theory was never disclosed to Defendants during the discovery period, and Thumbtzen did not timely identify SAG

lawyer Justin Touretz (on whom Thumbtzen apparently intends to rely to support her theory), as either a percipient or expert witness. Dkt. 75-3. Thumbtzen's new theory, and any evidence pertaining to the previously undisclosed witness on whom it is apparently based, should be stricken from the record as untimely and irrelevant. *See* Dkt. 86 and 87, incorporated herein.

Finally, as discussed above, Thumbtzen has no proof of damages. Thumbtzen produced no documents, did not disclose any reliable damages theory (or evidence thereof) in response to a targeted interrogatory, and did not disclose any damages expert or serve an expert report on damages. Marriott Dec. Ex. B (Thumbtzen Interrogatory Response No. 1); Ex. G (Thumbtzen Initial Disclosures). Moreover, Thumbtzen's claim for "punitive damages" is contrary to the law, as punitive damages are not recoverable on claims for breach of contract under Florida law. *American Intern. Land Corp. v. Hanna*, 323 So.2d 567, 570 fn. 9 ("'the general rule is that punitive damages are not recoverable for breach of contract, irrespective of the motive of the defendant.' (Citation omitted.)"). Summary judgment is warranted.

**<u>CONCLUSION</u>**

For the reasons discussed above, there is no genuine issue of material fact, and Thumbtzen's claims fail as a matter of law. Accordingly, Defendants respectfully request that the Court enter summary judgment in their favor and against Thumbtzen.

RESPECTFULLY SUBMITTED on July 13, 2017.

*/s/ Woodrow  H Pollack*
Woodrow H. Pollack
Florida Bar No.: 26802
Greenberg Traurig, LLP
101 E. Kennedy Blvd
Suite 1900
Tampa, FL 33602
(813) 318-5700 (telephone)
(813) 318-5900 (facsimile)
pollackw@gtlaw.com

Michelle Marriott (admitted pro hac vice)
Eric Buresh (admitted pro hac vice)
Mark Lang (admitted pro hac vice)
Erise IP, P.A.
6201 College Boulevard, Suite 300
Overland Park, KS 66211
(913) 777-5600 (telephone)
(913) 777-5601 (facsimile)
michelle.marriott@eriseIP.com
eric.buresh@eriseIP.com
mark.lang@eriseIP.com

*Attorneys for Defendant, Ubisoft, Inc.*

Ronnie J. Bitman, Esquire
Florida Bar No.: 0744891
rbitman@pearsonbitman.com
485 N. Keller Road, Suite 401
Maitland, Florida 32751
Telephone:  (407) 647-0090
Facsimile:   (407) 647-0092

*Attorneys for Defendant Optimum Productions*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 13, 2017 a true and correct copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent via e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Woodrow H Pollack*
Woodrow H Pollack

**DEFENDANTS' DISPOSITIVE MOTION FOR SUMMARY JUDGMENT**          25