UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


STEPHANIE YVONNE
THUMBTZEN,

    Plaintiff,

v.                                                       CASE NO. 8:15-cv-1735-T-23AAS

UBISOFT, INC., and
OPTIMUM PRODUCTIONS,

    Defendants.
_____/

## ORDER

In 1987 Michael Jackson's production company, Optimum Productions, hired Stephanie Thumbtzen to play a character in the music video for Jackson's song "The Way You Make Me Feel." Thumbtzen understood that she was appearing not as herself but rather as a character in the music video. (Thumbtzen Depo. at 72)

On November 23, 2010, Ubisoft released the video game *Michael Jackson: The Experience* for the Nintendo Wii. (Doc. 72-1) In the game, a player dances to Jackson's songs, and an on-screen avatar mimics the player's dancing. (Doc. 72-1) Also, the game displays the song's album cover and a fifteen-second clip

from the music video.[1]  Claiming that an avatar resembles Thumbtzen's "likeness," Thumbtzen sued Ubisoft and Optimum in state court on April 10, 2015, and demanded a royalty.  Ubisoft timely removed (Doc. 1) the action.

The operative complaint (Doc. 92) alleges that Ubisoft and Optimum violated Florida's Deceptive and Unfair Trade Practices Act by "using the unauthorized likeness of the plaintiff in the [] video game."  (Doc. 92 at ¶ 34)  Also, the complaint alleges that Optimum breached a September 15, 1987 employment contract with Thumbtzen.  (Doc. 92 at 8–9)  The defendants move (Doc. 96) for summary judgment.

**1. Subject-matter jurisdiction**

The July 27, 2015 notice of removal (Doc. 1) attempts to invoke federal-question and diversity jurisdiction.  At the time of removal, Thumbtzen claimed a violation of the Lanham Act (Doc. 2 at 9–10), but Thumbtzen amended the complaint on June 15, 2017, to omit the Lanham Act claim.

The evidence shows that the amount in controversy on the day of removal likely exceeded $75,000.  Throughout this action, Thumbtzen aspired to collect 2.5% of Ubisoft's revenue from the game, each copy of which Ubisoft initially sold for $60.  (Thumbtzen Depo. at 155)  The sale before removal of more than two million copies

---

[1] Thumbtzen admits that she owns no right to the album cover or the music video. (Thumbtzen Depo. at 92 and 243)

of the game (Doc. 93-3) establishes an amount in controversy likely (much) greater than $75,000. The parties' citizenship is completely diverse. Ubisoft properly invokes diversity jurisdiction.[2]

**2. FDUPTA**

Thumbtzen alleges a violation of Section 501.204, which prohibits an unfair or deceptive trade practice. According to the complaint, the avatar "confused the public into believing that [Thumbtzen] authorized the use of her likeness." (Doc. 92 at ¶ 35) The FDUPTA claim fails for at least three reasons.

First, Section 95.11(3)(f) establishes a four-year limitation for a FDUPTA claim. *Marlborough Holdings Grp. Ltd. v. Azimut-Benetti, Spa, Platinum Yacht Collection No. Two., Inc.*, 505 Fed.Appx. 899, 906 (11th Cir. 2013). Under Section 770.07, Florida Statutes, the FDUPTA claim "accrued" on November 23, 2010, the day Ubisoft began selling the game in Florida.[3] *See Putnam Berkley Grp., Inc. v. Dinin*,

---

[2] Even if the state-law claims fail to invoke diversity jurisdiction, the circumstance of this action warrants exercising pendent jurisdiction. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 344 (1988) (holding that a district court may exercise pendent jurisdiction over a state-law claim after the related federal-law claim "drop[s] out"). The defendants promptly removed the action to federal court and have litigated in federal court for more than two years; discovery began and ended in federal court; and the state-law claims present no novel question.

[3] Opposing summary judgment, Thumbtzen argues that the FDUPTA claim accrued on April 12, 2011, the day Ubisoft released the game for Xbox. (Doc. 99 at 7–8) For two reasons, the argument cannot defeat summary judgment. First, Thumbtzen identifies no difference between the Wii and Xbox editions. Although available for several consoles, the game constitutes a single "edition." Under Section 770.07, the FDUPTA claim accrued on November 23, 2010, the day of the Wii game's "first publication." Second, Rule 56(c), Federal Rules of Civil Procedure, requires citing record evidence to defeat summary judgment, but Thumbtzen cites no record evidence to show when Ubisoft began selling the game for Xbox.

734 So. 2d 532 (Fla. 4th DCA 1999) (Farmer, J.) (holding that a four-year limitation barred a 1995 suit against a defendant that initially published a book in 1988). Because Thumbtzen sued on April 10, 2015 — four and a half months after the expiration of the time within which to sue — the limitation bars the claim.

Second, Thumbtzen alleges that the defendants used Thumbtzen's "likeness" without Thumbtzen's authorization. (Doc. 92 at ¶ 34) But Thumbtzen, who agrees that she appeared in the music video as a character rather than as herself, admits that she owns no right to the character that she played in the music video.[4] (Thumbtzen Depo. at 73 and 266) Thumbtzen's admission that she owns no right to the character forecloses the FDUPTA claim based on the avatar's superficial resemblance to the music-video character that Thumbtzen played.

Third, Thumbtzen's response in opposition to summary judgment argues that "many of her Facebook Fans believe that [the avatar] was her."[5] (Doc. 99 at 9 (citing Thumbtzen Depo. at 156 and 266)) At page 156 of the deposition,

---

[4] Even Thumbtzen, whom the music-video director outfitted with a black dress and extensions, associates the attire with the music-video character rather than with herself. (Thumbtzen Depo. at 182) Also, the record reveals that Thumbtzen did not adopt for herself the character's appearance. Thumbtzen, who dresses like the music-video character only when hired to appear as the character, last wore the music-video attire a decade ago. (Thumbtzen Depo. at 179–81)

[5] Also, Thumbtzen argues that "[Ubisoft] has not provided any evidence that the sales of the video was not because of Plaintiff's fans purchasing this game due to the avatar." (Doc. 99 at 9) But the defendants' motion for summary judgment correctly observes that the record contains insufficient evidence to establish a genuine dispute about consumer confusion. Thumbtzen's argument, which improperly shifts the burden of production to Ubisoft, cannot defeat summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

- 4 -

Thumbtzen says only that "a lot of fans were sending and sharing and posting" pictures of the game. Thumbtzen says nothing about a consumer's purported confusion. At page 256 of the deposition, Thumbtzen says that the avatar's dancing next to Jackson's avatar caused people to "think of me." (Thumbtzen Depo. at 266) But Thumbtzen admits elsewhere that no consumer "would have any reason to believe that" Thumbtzen appeared in the game. (Thumbtzen Depo. at 227–28 and 242) In any event, defeating summary judgment requires more than a "mere . . . scintilla of evidence." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Even viewed favorably to Thumbtzen, the record reveals no genuine dispute whether the avatar likely confused a consumer.[6]

**3. Breach of contract**

Thumbtzen alleges that Optimum breached a September 15, 1987 employment contract by "failing to communicate" that the game would "use[]" Thumbtzen's "likeness."[7] (Doc. 92 at ¶¶ 40–45) Optimum correctly argues that the 1987 contract imposes on Optimum no duty to alert Thumbtzen to the game's debut. Although

---

[6] To the extent Thumbtzen argues that Ubisoft's use of the avatar in the game implied Thumbtzen's endorsement of the game, Thumbtzen's testimony belies that argument. Thumbtzen concedes that Ubisoft never included Thumbtzen's purported "likeness" in an advertisement and that Thumbtzen's fans understood that Thumbtzen had not endorsed or sponsored the game. (E.g., Thumbtzen Depo. at 264)

[7] The contract (Doc. 92-1) mentions a 2.5% royalty from the "merchandising" of the music video, but Thumbtzen admits that the 1987 contract neither contemplates nor obligates Optimum's payment based on a video game. (E.g., Doc. 92 at ¶ 42 ("There is no content [in the contract] regarding video games."); Doc. 96-5)

- 5 -

Rule 56(c)(1)(A) requires "citing to particular parts of materials" to support an argument, Thumbtzen fails to identify a plausible obligation by Optimum to "communicate" with Thumbtzen about the video game. In fact, Thumbtzen insisted throughout this action that the contract imposes on Optimum no duty attendant to a video game. (Doc. 92 at ¶ 42 ("There is no content regarding video games."); Doc. 99 at 10 ("Plaintiff never considered video games under this contract."))

Without citation to admissible evidence, Thumbtzen responds that "[d]efendants had obligations under the SAG/AFTRA agreement which they did not follow."[8] Again, Rule 56(c)(1)(A) requires "support[ing] an assertion by citing to particular parts of materials in the record."[9] Because Thumbtzen fails to cite admissible evidence to rebut Optimum's argument that the contract imposes on

---

[8] A May 30, 2017 order (Doc. 91) permits Thumbtzen to amend the complaint to "omit the 'withdrawn' claims and to omit the defendants voluntarily dismissed from the action." (Doc. 91 at 1) The new allegations (Doc. 92 at ¶¶ 44–45) that the defendants breached the contract by "fail[ing] to communicate with [the Screen Actors' Guild]" violate the May 30, 2017 order, which states that Thumbtzen "must not add a new claim or a new allegation." (Doc. 91 at 1) The new breach-of-contract theory involving communication with the Screen Actors' Guild cannot defeat summary judgment for at least the reason that Thumbtzen received no leave to allege the new theory.

[9] Additionally, Thumbtzen cites a purported contract between Sony Music and the defendants. (Doc. 99 at 3, which cites "Exhibit A") An August 16, 2017 order (Doc. 102) denies for failure to comply with Local Rule 1.09 the motion for leave to submit "Exhibit A" under seal, and Thumbtzen failed to submit a second motion compliant with the Local Rules.

Optimum no duty to notify Thumbtzen about the game, no genuine dispute of material fact appears.[10]

Even if the 1987 contract required Optimum to "communicate" about the game, Thumbtzen fails to identify damages from the alleged failure to communicate. In an interrogatory, Optimum asked Thumbtzen to explain the "full factual basis" for the breach-of-contract claim. Thumbtzen's response[11] mentions only punitive damages (Doc. 96-5), but Florida law prohibits punitive damages for a breach of contract. *Splitt v. Deltona Corp.*, 662 F.2d 1142 (5th Cir. 1981) (Clark, J.) (collecting Florida decisions).

In any event, the contract unambiguously permits Optimum to profit from Thumbtzen's appearance as a character in the music video. In the contract, Thumbtzen "specifically acknowledges that the results and proceeds of [Thumbtzen's] services, the title of the Motion Picture and all material furnished,

---

[10] In an attempt to establish a factual dispute, Thumbtzen cites the affidavit of attorney Justin Touretz, and the defendants object (Doc. 103) under Rule 56(c)(2) to Mr. Touretz's affidavit. The defendants argue that Thumbtzen identified Mr. Touretz as a potential witness two days after the close of discovery and that the post-discovery disclosure precludes deposing Mr. Touretz. (Doc. 103 at 3) Thumbtzen concedes disclosing Mr. Touretz after the close of discovery (Doc. 99 n.1) but offers no explanation for the tardy disclosure. Neither "substantially justified" nor "harmless," the failure to timely disclose Mr. Touretz prohibits Thumbtzen's using the affidavit to defeat summary judgment. Even if Thumbtzen timely disclosed Mr. Touretz, the defendants correctly argue (Doc. 99 at 8–9) that the affidavit offers inadmissible legal conclusions.

[11] The response states in full: "Arguendo, if at any time a court and/or jury believes there was a valid contract, then Ms. Thumbtzen would ask for punitive damages for breach of contract as the Defendants never made any efforts to pay what they claim is owed to Ms. Thumbtzen."

suggested, or performed by [Thumbtzen] shall belong exclusively to [Optimum] for all purposes and that [Optimum] shall have the right to exploit the results and proceeds of [Thumbtzen's] services hereunder, in perpetuity, in any and all media throughout the world." (Doc. 29-1 at 5)

## CONCLUSION

The defendants' motion (Doc. 96) for summary judgment is **GRANTED**. The clerk is directed (1) to enter judgment for Ubisoft, Inc., and Optimum Productions and against Stephanie Yvonne Thumbtzen, and (2) to close the case.

ORDERED in Tampa, Florida, on October 11, 2017.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE